**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF IOWA**
**CENTRAL DIVISION**

| | |
|---|---|
| **JEFFREY JONES,**<br>**Plaintiff,**<br><br>**vs.**<br><br>**DALLAS COUNTY, IOWA, CHAD LEONARD,** individually and in his official capacity as Sheriff of Dallas County; **ADAM INFANTE,** individually and in his official capacity as Sheriff of Dallas County; **KENNETH HUNZIKER,** individually and in his official capacity as physician with the Dallas County Jail; **BRIDGET PLATHE,** in her individual capacity as a nurse for the Dallas County Jail; **ADVANCED CORRECTIONAL HEALTHCARE, INC.,**<br>**Defendants.** | **Civil No.: 4:23-cv-129**<br><br>**FIRST AMENDED PETITION AND JURY DEMAND** |

**COMES NOW**, the Plaintiff, Jeffrey Jones, and for his First Amended Complaint and Jury Demand respectfully states to the Court as follows:

## PARTIES

1. Plaintiff Jeffrey Jones is a citizen of the State of Iowa residing in West Des Moines, Polk County, Iowa who was at all times relevant to the events complained of herein, incarcerated at the Dallas County Jail.

2. Defendant Dallas County, Iowa is a county corporation existing under laws of the State of Iowa and operates the Dallas County Jail ("DCJ").

3. Defendant Chad Leonard is believed to be a citizen and resident of Iowa and was serving as Sheriff for Dallas County, Iowa for part of the time relevant to the events complained of herein.

4. Defendant Adam Infante is believed to be a citizen and resident of Iowa and was serving as Sheriff or Chief Deputy Sheriff for Dallas County, Iowa at all times relevant to the events complained of herein.

5. Defendant Kenneth Hunziker is believed to be a citizen and resident of Iowa and was serving as a physician at the Dallas County Jail at all times relevant to the events complained of herein.

6. Defendant Bridget Plathe is believed to be a citizen and resident of Iowa and was serving as a nurse for the Dallas County Jail at all times relevant to the events complained of herein.

7. Defendant Advanced Correctional Healthcare, Inc., ("ACH") is an Illinois foreign corporation licensed to do business in the State of Iowa with its registered agent located at 400 East Court Avenue, Des Moines, Iowa 50309.

**JURISDICTION AND VENUE**

8. Subject matter jurisdiction of the District Court is proper pursuant to Iowa Code §602.6101.

9. Venue is proper in the District Court for Dallas County, Iowa pursuant to Iowa Code §616.14 and §616.18.

10. The amount in controversy exceeds the jurisdictional amount.

## GENERAL FACTUAL ALLEGATIONS

11. At all times relevant hereto, Jeff was incarcerated at DCJ.

12. Plaintiff Jeff Jones was committed to the custody and care of DCJ on August 25, 2022, to serve a thirty (30) day sentence after he pled guilty to Operating While Under the Influence on April 28, 2022. (OWCR045287).

13. Jeff is a fifty-seven (57) year old, ex-Marine Corps male who suffers from Bi-Polar Disorder, Anxiety, Alcoholism, and heart complications.

14. As a result of these illnesses, Jeff is prescribed via his primary care physician, cardiologist, and psychiatrist a slew of medications to deal with said ailments.

15. Jeff is prescribed Lithium for his Bi-Polar Disorder; Naltrexone for his alcohol addiction; Metoprolol for high blood pressure and heart attack prevention; Nitroglycerin – "as needed" for Coronary Artery issues; and Tamsulosin for his enlarged prostate.

16. All of the aforementioned medications were brought with Jeff and presented to the Court with his prescriptions for each.

17. Once Jeff was booked into DCJ, his medications were taken from by Jail Staff.

18. Based upon information and belief, ACH is contracted to provide medical services at Dallas County Jail for its inmates and employed Dr. Hunziker and Nurse Plathe at all times material hereto.

19. Jeff was told that the above medications had to be approved by Dr. Hunziker and he would review each of them and decide which ones Jeff was to receive while incarcerated at DCJ.

20. These medications prescribed to Jeff were deemed as necessary as prescribed by Jeff's personal doctors.

21. On August 26, 2022, when Jeff was getting his medications dispensed to him by Nurse Plathe, Jeff noticed he was not receiving Lithium or Naltrexone.

22. When Jeff asked Nurse Plathe why he was not given his prescribed medications, Nurse Plathe told him that Lithium, Naltrexone, and Nitroglycerine were not approved by Dr. Hunziker.

23. Additionally, Nurse Plathe stated that there was no appeals process available to Jeff and that "even if he filed a grievance, there was no way Hunziker was going to approve the three medications."

24. Further, when Jeff inquired into why he was not receiving Nitroglycerine and Nurse Plathe stated that Dr. Hunziker informed her that only after Jeff started experiencing chest pain, would Dr. Hunziker come and examine Jeff for any coronary issues.

25. Hunziker never consulted with Jeff's doctors to discuss the necessity of Jeff having to continue on a regimented schedule of his medications.

26. On or about September 4, 2022, roughly ten days since Jeff stopped taking Lithium and Naltrexone, Jeff started experiencing various symptoms of withdrawal, including, but not limited to; insomnia, manic and suicidal thoughts,

diarrhea, high anxiety and panic attacks, vivid nightmares that included violent harm to himself and loved ones, and severe mood swings.

27. These symptoms remained throughout his entire time in DCJ and only progressively got worse.

28. Jeff was released on or about September 17, 2022 due to early release for being a "Trustee."

29. Jeff's role as "Trustee" kept him isolated and alone and due to the withdrawal symptoms he was experiencing as a result of not receiving his medications.

30. Jeff was fearful the entire time of what he would do and the actions he potentially could have taken while off his medication.

31. Furthermore, not only did DCJ neglect to provide Jeff with his prescribed medication, Jeff was also faced with threats of intimidation and retaliation if he tried to rectify the situation and request his medications.

32. Following his release, on September 18, 2022, Jeff began drinking alcohol again to cope with his depression and manic thoughts from not having his Naltrexone in his system.

33. Additionally, since he did not take Lithium for the last three plus weeks, his cognitive functions worsened, his judgment was impaired, and he was experiencing severe mood swings.

34. Jeff felt out of control and scary as a result of being deprived of his medications.

35. On September 19, 2022, Jeff took an Uber to his primary care physicians office to have his Lithium levels checked knowing he was without his medication while incarcerated at DCJ.

36. On July 12, 2022, prior to Jeff's incarceration, his physician checked his Lithium level, which fell within the standard therapeutic range of 0.6 mmol/L.

37. On September 19, 2022, after Jeff's incarceration, his physician re-checked his Lithium level, which fell below the standard therapeutic range at <0.1mmol/L.

38. Following his visit to his physician's office, Jeff's desire to consume alcohol became stronger.

39. Due to his lapse in treatment, Jeff's mind had crashed, and he was unable to think clearly, preventing him from taking his medication as prescribed to deal with his illnesses.

40. At this time, Jeff was in real trouble and felt stuck as a result of DCJ's neglect and prohibition on Jeff's ability to take his medication.

41. On September 22, 2022, Jeff's heart began to race, and his chest tightened as a result of the alcohol and the lack of medication.

42. That night, Jeff called 911 and was transported via ambulance to Mercy West Hospital for an Alcohol Detox and was given IV fluids and medications that soften the side effects of an alcohol detox.

43. In the early morning hours of September 23, 2022, Jeff was released and was able to return home.

44. Additionally, Jeff re-started his medications at the normal, prescribed doses.

45. As a result of his diligence to remain on the regimented schedule of his medications, Jeff has now finally begun to feel "normal" and healthy again.

46. Though Jeff has begun to feel better and has performed his normal life functions with little issue; as a result DCJ's actions in taking Jeff's prescribed medication away, it will take many appointments with his doctors to get truly recovered.

47. Further, Jeff's recovery from his experience at DCJ has incurred thousands of dollars in costs and lost wages.

48. While Jeff was incarcerated at DCJ, he was faced with unexplainable and horrific treatment that put his life in danger.

49. This excruciating pain and suffering caused by DCJ was without cause or justification that caused severe harm to Jeff.

50. At all times material hereto, Defendants supervised, coordinated, and/or instructed the conditions that Jeff was subjected to within the Dallas County Jail.

## <u>CAUSES OF ACTION</u>

### COUNT I

**CIVIL RIGHTS VIOLATION PURSUANT TO 42 U.S.C. § 1983**
**VIOLATION OF EIGHTH AMENDMENT TO THE UNITED STATES CONSTITUTION**
**Denial of Medical Care**
**(*Against Defendants Hunziker and Plathe, in their individual capacities*)**

51. Plaintiff repleads each preceding paragraph as if fully set forth herein.

52. At all times material hereto, Dr. Hunziker's actions and/or omissions were made under the color of authority and law as a Physician with the Dallas County Jail.

53. At all times material hereto, Nurse Plathe's actions and/or omissions were made under the color of authority and law as a Nurse with the Dallas County Jail.

54. From August 25, 2022 through September 17, 2022, Defendants violated Jeff's clearly established constitutional rights when they failed to provide adequate medical treatment for his serious medical needs.

55. From August 25, 2022 through September 17, 2022, Jeff was in custody of the Dallas County Sheriff's Department and/or Dallas County Jail.

56. From August 25, 2022 through September 17, 2022, Jeff suffered tremendously from serious medical needs specifically his prescribed medications.

57. Based on their personal observations of Jeff, as well as information which had been communicated to them, each Defendant had actual knowledge of Jeff's serious medical needs.

58. As such, each Defendant violated Jeff's Fourteenth Amendment right under the United States Constitution to medical care.

59. The lack of medical treatment provided by Defendants was unreasonable under the circumstances.

60. Defendants' actions were willful, wanton, unlawful, and in gross disregard of the civil rights of Jeff, justifying an award of punitive damages.

61. Defendants were each individually aware that their conduct, individually and collectively, put Jeff at risk of serious, immediate, and proximate harm, including death.

62. As a direct and proximate result of the failure of the Defendants to act to and provide adequate medical care, Jeff has and will in the future suffer and incur the following damages:

a. Deprivation of his constitutional rights;

b. Humiliation, degradation, public ridicule, and loss of personal reputation;

c. Consequential damages;

d. Physical pain, mental and emotional distress and suffering including loss of mind and body;

e. All actual and compensatory damages including, but not limited to, past and present pain and suffering and medical expenses;

f. Loss of income and earning capacity; and,

g. All expenses associated with the prosecution of the instant action including, but not limited to, court costs, anticipated discovery expenses, anticipated expert expenses, and legally allowable judgment interest.

**WHEREFORE**, the Plaintiff, Jeffrey Jones, prays for judgment against the aforementioned Defendants as follows:

a. Actual, Compensatory, Consequential, and all other allowable damages against Defendants, with interest, in an amount as yet to be determined;

b. Compensation for violation of his constitutional rights, loss of income and earning capacity, humiliation, degradation, public ridicule, loss of personal and professional reputation, and emotional distress;

c. Physical pain, mental and emotional distress and suffering including loss of mind and body;

d. Plaintiff's cost in this action, including but not limited to reasonable attorney's fees and costs pursuant to 42 U.S.C. 1988;

e. Punitive damages; and,

f. Any other damages allowed by federal or state law or which the Court deems just and equitable.

**COUNT II**
**CIVIL RIGHTS VIOLATION PURSUANT TO 42 U.S.C. § 1983**
**VIOLATION OF EIGHTH AMENDMENT TO THE UNITED STATES CONSTITUTION**
***Monell* Liability for Denial of Medical Care**
**(*Against Defendants Dallas County, Iowa, Chad Leonard, and Adam Infante*)**

63. Count II is amended to reflect its dismissal by the district court on September 14, 2023, without waiving any right to appeal such dismissal.

**COUNT III**
**CIVIL RIGHTS VIOLATION PURSUANT TO 42 U.S.C. § 1983**
**VIOLATION OF EIGHTH AMENDMENT TO THE UNITED STATES CONSTITUTION**
***Monell* Liability for Denial of Medical Care**
**(*Against Defendant Advanced Correctional Healthcare, Inc.*)**

64. Plaintiff repleads each preceding paragraph as if fully set forth herein.

65. ACH is a person for purposes of a Section 1983 action for damages.

66. At all times material hereto, ACH's actions and/or omissions were made under color of law as a contractor for Defendant Dallas County and Sheriff's Leonard and Infante.

67. ACH failed to establish and/or maintain and/or enforce official policies, patterns, practices, or customs to ensure individuals in the care of ACH, the Dallas

County Sheriff's Department and/or the Dallas County Jail, who are known by its employees to have serious medical needs and require prescribed medications, receive the adequate medical care.

68. Alternatively, Defendant has established and/or maintained and/or enforced official policies, patterns, practices, or customs which deprive individuals known by employees of ACH, the Dallas County Sheriff's Department and/or the Dallas County Jail to have serious medical needs and require prescribed medications, receive the adequate medical care.

69. Prior to the events described supra, Defendant deliberately and with reckless disregard for the constitutional rights of its citizens failed to establish an adequate and sufficient policy and procedure, for training or supervising its officers and employees as to the actions to be taken when an individual known to have serious medical needs is showing signs of pain and distress.

70. Alternatively, prior to the events described supra, Defendant deliberately and with reckless disregard for the constitutional rights of its citizens established an inadequate and insufficient policy and procedure, for training or supervising its officers and employees as to when an individual known to have serious medical needs is showing signs of physical pain and distress.

71. Defendant deliberately and with reckless disregard for the constitutional rights of inmates in its care failed to adequately and sufficiently train and/or supervise employees within ACH, the Dallas County Sheriff's Department

and/or Dallas County Jail regarding providing adequate medical care to an individual known to have serious medical needs.

72. The acts and/or omissions of Defendant regarding its employees amounted to deliberate indifference to the rights and safety of citizens, including Jeff.

73. The actions and/or omissions of Defendant intruded upon Jeff's right to receive adequate medical care while in custody of ACH, the Dallas County Sheriff's Department and/or Dallas County Jail.

74. The failure of Defendant to implement effective policies, patterns, practices, and/or customs was a moving force behind, and effectively caused, the violations of Jeff's constitutional rights.

75. As a direct and proximate result of the failure of Defendant to act to and provide adequate medical care, Jeff has and will in the future suffer and incur the following damages:

a. Deprivation of his constitutional rights;

b. Humiliation, degradation, public ridicule, loss of personal and professional reputation, and emotional distress;

c. Consequential damages;

d. Actual and compensatory damages, including but not limited to, the expenses of defending herself against resulting criminal charges;

e. All expenses associated with the prosecution of the instant action, including, but not limited to, court costs, anticipated discovery expenses, anticipated expert expenses, and the maximum legally allowable judgment interest;

f. Loss of income and earning capacity; and

g. All expenses associated with the prosecution of the instant action including, but not limited to, court costs, anticipated discovery expenses, anticipated expert expenses, and legally allowable judgment interest.

**WHEREFORE,** the Plaintiff, Jeffrey Jones, prays for judgment against the aforementioned Defendant as follows:

a. Actual, Compensatory, Consequential, and all other allowable damages against Defendants, with interest, in an amount as yet to be determined;

b. Compensation for violation of his constitutional rights, loss of income and earning capacity, humiliation, degradation, public ridicule, loss of personal and professional reputation, and emotional distress;

c. Physical pain, mental and emotional distress and suffering including loss of mind and body;

d. Plaintiff's cost in this action, including but not limited to reasonable attorney's fees and costs pursuant to 42 U.S.C. 1988; and,

e. Any other damages allowed by federal or state law or which the Court deems just and equitable.

## COUNT IV

### NEGLIGENCE

### (*Against Defendants Hunziker and Plathe*)

76. Plaintiff repleads each preceding paragraph as if fully set forth herein.

77. Dr. Hunziker and Nurse Plathe owed Jeff, a duty of care for his safety, security, custody, and well-being.

78. Defendants breached said duty, constituting negligence, in one or more of the following particulars:

a. Failing to approve medication prescribed to Jeff that was deemed as necessary by his medical care providers;

b. Aiding and abetting in the neglect of Jeff's medical needs by not providing him or drawing attention to his prescribed medications;

c. Failing to intervene in a timely manner to stop the withdrawal symptoms resulting from a denial of Jeff's medication;

d. Failing to conduct an appropriate medical examination of Jeff while at the Dallas County Jail;

e. Failing to seek appropriate medical attention for Jeff despite his displaying signs of a serious medical condition while in custody;

f. Failing to appreciate the nature of Jeff's symptoms despite knowledge of his illnesses; and

g. Failing to appreciate the risk of harm to Jeff from denying medical treatment.

79. It is clearly established under Iowa law that common law claims for negligence of licensed medical practitioners exists to such an extent that every reasonable employee would understand this conduct constitutes a violation of the law.

80. Hunziker and Nurse Doe negligence was a proximate cause of Jeff's injuries.

81. As a result of Hunziker and Nurse Doe's negligence, Jeff sustained legally cognizable damages and injuries, having suffered and incurred in the past, and will suffer, and incur in the future, the following:

a. Physical pain, distress, and suffering;

b. Mental and emotional pain, distress, and suffering;

c. Loss of mind and body;

d. All actual and compensatory damages including, but not limited to, past and present pain and suffering and medical expenses;

e. Loss of income and earning capacity;

f. Punitive damages; and

g. All expenses associated with the prosecution of the instant action including, but not limited to, court costs, anticipated discovery expenses, anticipated expert expenses, and legally allowable judgment interest.

**WHEREFORE**, the Plaintiff, Jeffrey Jones, demands judgment against Defendants Hunziker and Plathe, in an amount representing full and fair compensation for the injuries and damages as set forth above, including but not limited to compensatory damages, punitive damages, for such attorneys' fees, interest, and costs as allowed by law, and for such other relief as may be just under the circumstances.

**COUNT V**
**NEGLIGENT TRAINING AND SUPERVISION**
**(*Against Dallas County, Iowa, Chief Leonard, Chief Infante, and Advanced Correctional Healthcare, Inc.*)**

82. Plaintiff repleads each preceding paragraph as if fully set forth herein.

83. Defendants were the employers and/or supervising officers of Defendants Hunziker and Nurse Doe.

84. As Defendants' employers/supervisors within the Dallas County Sheriff's Office and Advanced Correctional Healthcare, Inc. (ACH), these Defendants have a duty to exercise reasonable care in the training and supervision of individuals who, because of their employment, may post a threat of injury to members of the public.

85. These Defendants knew or should have known of Hunziker and Nurse Doe's dangerous proclivities, and the threat of injury they posed in effectuating their duties.

86. These Defendants breached their duty in the negligent and reckless training and supervision of Defendants Hunziker and Nurse Doe.

87. As a direct and proximate result of the failure of Defendants to act to and provide adequate medical care, Jeff has and will in the future suffer and incur the following damages:

a. Physical pain, distress, and suffering;

b. Mental and emotional pain, distress, and suffering;

c. Loss of mind and body;

d. All actual and compensatory damages including, but not limited to, past and present pain and suffering and medical expenses;

e. Loss of income and earning capacity; and,

f. All expenses associated with the prosecution of the instant action including, but not limited to, court costs, anticipated discovery expenses, anticipated expert expenses, and legally allowable judgment interest.

**WHEREFORE**, the Plaintiff, Jeffrey Jones, demands judgment against Defendants Dallas County, Sheriff Chad Leonard, Sheriff Adam Infante, and Advanced Correctional Healthcare, Inc., in an amount representing full and fair compensation for the injuries and damages as set forth above, interest, and costs as allowed by law, and for such other relief as may be just under the circumstances.

## COUNT VI
### RESPONDEAT SUPERIOR
### (*Against Defendants Dallas County, Iowa, Chief Leonard, Chief Infante, and Advanced Correctional Healthcare, Inc.*)

88. Plaintiff repleads each preceding paragraph as if fully set forth herein.

89. At all times material hereto, an employer-employee relationship existed between the Defendants, as the employer, and Defendant Hunziker and Defendant Nurse Doe as employees.

90. At all times material hereto, Defendants Hunziker and Doe were acting within the scope of their employment with Defendant Advanced Correctional Healthcare, Inc. (ACH).

91. At all times material hereto, Defendant Advanced Correctional Healthcare, Inc. (ACH) was contracted as the healthcare provider for Defendant Dallas County, Iowa and Sheriff's Leonard and Infante.

92. Under the doctrine of respondeat superior, Defendants are liable for the aforementioned conduct and/or omissions of Defendant Hunziker and Defendant Nurse Doe, including violations of the Iowa Constitution.

93. Defendants actions were willful, wanton, unlawful, and in gross disregard of Jeff's rights and reputation, justifying an award of punitive damages.

94. Plaintiff hereby requests reasonable attorney fees and costs associated with prosecuting this action as each Defendants behavior was oppressive, conniving, harsh, cruel, and/or tyrannical, individually, and collectively.

95. As a direct and proximate result of the failure of Defendants to act to and provide adequate medical care, Jeff has and will in the future suffer and incur the following damages:

a. Physical pain, distress, and suffering;

b. Mental and emotional pain, distress, and suffering;

c. Loss of mind and body;

d. All actual and compensatory damages including, but not limited to, past and present pain and suffering and medical expenses;

e. Loss of income and earning capacity; and,

f. All expenses associated with the prosecution of the instant action including, but not limited to, court costs, anticipated discovery expenses, anticipated expert expenses, and legally allowable judgment interest.

**WHEREFORE**, the Plaintiff, Jeffrey Jones, demands judgment against Defendants Dallas County, Sheriff Chad Leonard, Sheriff Adam Infante, and Advanced Correctional Healthcare, Inc., in an amount representing full and fair compensation for the injuries and damages as set forth above, interest, and costs as allowed by law, and for such other relief as may be just under the circumstances.

## JURY DEMAND

Plaintiff hereby demands a trial by jury in this matter on all counts to which Plaintiff is entitled to a jury.

**GRIBBLE, BOLES, STEWART & WITOSKY LAW**

BY: /s/ Matthew M. Boles
Matthew M. Boles AT0001037
BY: /s/ Adam Witosky
Adam C. Witosky AT0010436
2015 Grand Avenue, Suite 200
Des Moines, Iowa 50312
Telephone: (515) 235-0551
Facsimile: (515) 243-3696
Email: mboles@gbswlaw.com
awitosky@gbswlaw.com
**ATTORNEYS FOR PLAINTIFF**